UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:08cv122

| | |
|---|---|
| DIRECTV, INC., <br>     Plaintiff <br><br> v. <br><br> MICHAEL CRAIG FERRI and <br> FEELIN LUCKY TAVERN INC., <br>     Defendants. | **ORDER** |

**THIS MATTER** is before the court on Plaintiff DIRECTV, Inc.'s Motion for Default Judgment (Document #11), filed April 30, 2009. Attached to this motion was an Affidavit of the Plaintiff, an Affidavit of Plaintiff's Attorney, a Memorandum of Law, a Rule 54(b) Statement, a Statement for Judgment, a copy of the Default Judgment, and a Certificate of Service. Defendants have not entered an appearance in this matter and as such have not filed a response to Plaintiff's Motion for Default Judgment. This matter is now ripe for disposition.

### FACTUAL AND PROCEDURAL BACKGROUND

DIRECTV, Inc. ("DIRECTV") is a direct broadcast satellite provider. (Compl. ¶ 5.) DIRECTV's Satellite Programming is received by DIRECTV subscribers through the use of a fixed outdoor satellite dish, which is connected by cable to an indoor satellite receiver. In order to prevent the unauthorized receipt and use of its Satellite Programming, DIRECTV uses encryption technology to scramble the signal, thereby making the signal unusable until it is unscrambled. (Compl. ¶ 10.) Once a DIRECTV customer pays a subscription fee, the satellite signal is unscrambled and the customer can receive DIRECTV's Satellite Programming. (*Id.*)

1

DIRECTV charges different subscription rates to residential and commercial subscribers, with residential rates being less than those charged to commercial establishments. (Compl. ¶ 11.) Because equipment used with DIRECTV services can be moved from residential locations to commercial locations without DIRECTV's knowledge, owners of commercial establishments will sometimes obtain a residential DIRECTV subscription for their home and then surreptitiously move the DIRECTV equipment to their business to utilize the cheaper residential subscription in a commercial environment. (Id.)

To prevent this type of unlawful use, DIRECTV hires private investigators to travel to local businesses and to monitor for unauthorized broadcasts of DIRECTV services. (Pl.'s Aff. ¶ 9.) In the present case, one such investigator visited Feelin Lucky Tavern on November 25, 2007, which is a bar and restaurant with an estimated capacity of 300 people.[1] (Pl.'s Aff. ¶ 11.) While there, the investigator witnessed an illicit broadcast of NFL Sunday ticket. (Pl.'s Aff. ¶ 10.) Specifically, the investigator asked the bartender to turn on the Minnesota Vikings v. New York Giants contest, which was only available in North Carolina through DIRECTV's Sunday Ticket,[2] and the bartender complied. After receiving the investigator's report, DIRECTV examined its subscription records and determined that there was no DIRECTV commercial account for Feelin Lucky Tavern or any

---

[1] Or at least was at the relevant time period. The court is unsure from DIRECTV's filings in this case, but it appears that the business may now be defunct.

[2] Sunday Ticket is a premium subscription package that allows its purchasers to watch up to 14 "out-of-market" NFL games each Sunday that would otherwise be unavailable for viewing. Without Sunday Ticket, only the games broadcast locally can be seen on television. (Pl.'s Aff. ¶ 7.) Because Sunday Ticket is offered exclusively by DIRECTV, and because no similar subscription package is available through any other cable or satellite television provider, the ability to view an out-of-market professional football game on a television is clear evidence that the television is broadcasting a DIRECTV signal. In addition, a sign outside of the establishment advertised the availability of DIRECTV's Sunday Ticket within.

other business at that same address. However, DIRECTV did discover a residential account in the name of Michael Ferri, the owner of Feelin Lucky Tavern, that was affiliated with Ferri's home address. (Pl.'s Aff. ¶ 13.)

As a result of these discoveries, DIRECTV filed a complaint against Ferri and Feelin Lucky Tavern, Inc. in this court on October 20, 2008. In the complaint, DIRECTV alleged that Defendants violated the Cable Communications Policy Act of 1984, 47 U.S.C. § 605(a), et seq., and requested actual or statutory damages. Although Defendants were served with a summons two days later, Defendants never answered the complaint. The clerk docketed an Entry of Default against the Defendants on April 24, 2009. On April 30, 2009, DIRECTV filed the Motion for Default Judgment that is currently before the court. In the present motion, DIRECTV asks the court to grant judgment against each defendant and to hold each defendant liable for the following: (1) up to ten thousand dollars ($10,000.00) in statutory damages under § 605(e)(3)(C)(i)(II), (2) up to one hundred thousand dollars in statutory damages ($100,000.00) under § 605(e)(3)(C)(ii), and (3) costs and attorneys' fees under § 605(e)(3)(B)(iii) in the amount of $637.00 per defendant.[3]

## DISCUSSION

Section 605(a) provides in pertinent part as follows:

> [N]o person receiving, assisting in receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee . . . . No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information

---

[3]DIRECTV's complaint also contained two other counts, which alleged violations of the Wiretap Act, 18 U.S.C. § 2511, and civil conversion. However, DIRECTV has moved for default judgment against Defendants only with respect to Defendants' violations of the Cable Act.

therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Any person aggrieved by a violation of Section 605(a) may bring a private civil action against the violator and seek damages under Section 605(e)(3).

In the present case, DIRECTV has established a violation of section 605(a). Since Defendant has failed to file an answer and default has been entered, the allegations in DIRECTV's complaint are admitted as true. See DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 322 n.2 (4th Cir. 2008). Although default alone is not sufficient to establish liability, DIRECTV's complaint and motion for default judgment with supporting affidavits sufficiently establish violations of the Cable Act. These documents show that Ferri, although authorized to receive DIRECTV's satellite transmissions for residential use, was not authorized to receive these satellite transmissions for commercial use and was not entitled to broadcast DIRECTV's transmissions to third parties for commercial benefit. These documents also show that Feelin Lucky Tavern was not authorized to receive the DIRECTV satellite transmissions in any manner and was further prohibited from sharing these transmissions with its customers for commercial gain.

Having determined that both Ferri and Feelin Lucky Tavern violated the Cable Act, the issue now before the Court is the question of damages. Damages for a violation of Section 605(a) are permitted as follows:

> The Court – (i) *may* grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section; (ii) *may* award damages as described in subparagraph (C); and (iii) *shall* direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B) (emphasis added).

### 1. Statutory damages

Statutory damages for violations of the Cable Act are available as provided for in § 605(e)(3)(C):

> **(i)** Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses . . . **(II)** the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . .
>
> **(ii)** In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation of subsection (a) of this section.

The award of statutory damages under Section 605(e)(3) is committed to the Court's discretion. See Rawlins, 523 F.3d at 330 n. 8; DIRECTV v. Haskell, 344 F. Supp. 2d 761, 763-64 (D. Me. 2004); DIRECTV, Inc. v. Montes, 338 F. Supp. 2d 352, 355 (D. Conn. 2004). Moreover, the statute does not make an award of statutory damages mandatory, as evidenced by the use of the permissive term "may." 47 U.S.C. § 605(e)(3)(B)(ii) (stating that the court *"may* award damages as described in subparagraph (C)"). However, if the court does decide to award statutory damages, such damages must fall within the monetary parameters set forth in the statute.

Where courts have decided that an award of statutory damages is necessary under § 605(e)(3), such courts have used various methods to calculate "just damages," including assessing the maximum statutory rate; estimating the amount of services the defendant pirated and applying a multiplier to that figure; adopting the plaintiff's estimate of the amount of services pirated; and, where there is no evidence of actual usage or commercial advantage, applying the statutory minimum for each pirated device. See Haskell, 344 F. Supp. 2d at 764; Montes, 338 F. Supp. 2d at 355. While

using these methods, court have also considered a number of factors, including: (1) whether the defendant profited as a result of the violation; (2) whether the defendant assisted or induced others in violating the statute; (3) whether the defendant's violation was willful or flagrant; (4) whether the damages will be sufficient to deter similar conduct; and (5) whether the damages are comparable to those awarded in similar cases. See DIRECTV, Inc. v. Huynh, 318 F. Supp. 2d 1122, 1131 (M.D. Ala. 2004). In sum, "'[i]n its broad discretion for determining statutory damages, the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed.'" Haskell, 344 F. Supp. 2d at 764 (quoting Cable/Home Communication Corp. v. Network Prods., Inc., 902 F. 2d 829, 852 (11th Cir. 1990)).

This court also notes that for similar violations[4] of the Wiretap Act, 18 U.S.C. § 2511, the Fourth Circuit has advised district courts to consider the following factors when exercising their discretion to award statutory damages: (1) the severity of the violation, (2) the degree of harm to the victim, (3) the relative financial burdens of the parties, and (4) the purposes to be served by imposing the statutory damages amount. Rawlins, 523 F.3d at 327.

In the present case, Defendants' violation was not particularly severe. The DIRECTV investigator observed an illegal broadcast of DIRECTV's Sunday Ticket on a single occasion. At the time the investigator entered the bar, all of the televisions were tuned in to the local Carolina Panthers game, which was readily available on all local televisions. Only after the investigator requested an out-of-market football game did the bartender oblige by turning on a contest that was broadcast exclusively on Sunday Ticket. Relevant to the issue of both the degree of harm to the

---

[4] I.e., offenses such as intercepting and decrypting DIRECTV satellite transmissions without authorization.

victim and the severity of the violation, on the date in question there was only one customer in the bar. In addition, Feelin Lucky Tavern had begun operations only a few months prior to the investigator's visit, leaving only a small window in time for illegal access of DIRECTV's materials. See (Pl.'s Aff. Ex. C.) Thus, there is little evidence that Ferri or Feelin Lucky Tavern profited greatly from the display of DIRECTV's programming. There is also scant evidence of the harm to DIRECTV that resulted from the unauthorized exposure of its product, other than any lost revenue as calculated by the difference in the residential and commercial subscription rates. However, DIRECTV has not informed the court what this difference might be.

On the other hand, DIRECTV is required to employ investigators, auditors, and attorneys to combat the illegal use of residential subscriptions for commercial purposes, and these efforts are expensive. Furthermore, the court finds that Ferri and Feelin Lucky Tavern's violations were willful. This conclusion is supported by the allegations in DIRECTV's complaint, which are accepted as true due to Defendants' failure to answer, and by Defendants' failure to answer itself. Tiffany v. Luban, 282 F.Supp.2d 123, 124-25 (S.D.N.Y.2003). Based on the allegations in the complaint, the court finds that Ferri acted deliberately to receive and display DIRECTV signals and programming in a commercial establishment when he knew this was not allowed. Finally, if the court were to impose a statutory penalty, this would discourage other individuals from committing similar violations in the future.

Having now carefully considered the relevant factors and the evidence before the undersigned with respect to Defendants Ferri and Feelin Lucky Tavern, the Court will award statutory damages for Defendants' violation of Section 605(a) in the amount of $1,000.00. On the facts of this case, the court in its discretion does not believe that an enhancement pursuant to § 605(e)(3)(C)(ii) is

appropriate. The award of damages in the amount of $1,000.00 is sufficient to punish the conduct complained of and to deter future violations of the Cable Act.

### 2. Attorneys' fees and costs

Pursuant to § 605(e)(3)(B)(iii), a court "shall direct the recovery of full costs" to the prevailing party in an action brought under § 605(a), including an award for "reasonable attorneys' fees." In the instant case, DIRECTV's attorney has submitted an affidavit stating costs of $575.00 related to service of process and to the filing fee in this case. Counsel's affidavit also shows attorneys' fees of $699.00. Taken together, DIRECTV requests total litigation expenses of $1,274.00. The Court will award DIRECTV its costs in the amount of $575.00. The court further finds that DIRECTV's stated attorneys' fees are reasonable and properly documented. For these reasons, the Court elects to impose a total award of $1,274.00 for attorneys' fees and costs.

### III. ORDER

**IT IS THEREFORE ORDERED THAT:**

1) Defendants Ferri and Feelin Lucky Tavern are permanently enjoined from committing or assisting in the commission of any violation of 47 U.S.C. § 605;

2) Plaintiff's request for statutory damages under the Cable Act is **GRANTED** in the amount of $1,000.00;

3) Plaintiff's request for an award of attorneys' fees and costs is **GRANTED** in the amount of $1,274.00; and

4) Defendants shall be jointly and severally liable for the total amount of damages and costs.

Signed: November 24, 2009

*Richard L. Voorhees*
Richard L. Voorhees
United States District Judge